# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BLETTNER AVENUE, LLC, | : | Civil No. 1:24-CV-01342 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| RENTAL UNIFORM SERVICE, INC. | : | |
| and | : | |
| CINTAS CORPORATION, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Blettner Avenue, LLC ("Blettner"), brings this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and Pennsylvania's Hazardous Sites Cleanup Act ("HSCA"). Blettner seeks to recover response costs it allegedly incurred to contain pollution on its property caused by Rental Uniform Service, Inc. ("RUS") and Cintas Corporation ("Cintas") (collectively, "Defendants"). Presently submitted for the court's consideration are cross-motions for summary judgment. For the reasons that follow, the court will grant in part and deny in part each motion.

## **BACKGROUND**[1]

Defendants' property and Blettner's property are located opposite each other across North Blettner Avenue in Hanover, Pennsylvania. (*See* Doc. 21, ¶¶ 1, 12.)

---

[1] The court discerns the facts of this case from each parties' statement of material facts, Docs. 21 & 24, each party's counter-statement of facts, Docs. 26 & 28, and the exhibits attached thereto.

The properties are located at 121 North Blettner Avenue ("Defendants' Property") and 100 North Blettner Avenue ("Plaintiff's Property"), respectively.  (*See id.*)

**A. Contamination of Defendants' Property and Plaintiff's Property**

RUS owned Defendants' Property prior to 2002.  (*See id.* ¶ 3.)  On that property, RUS operated a commercial laundering facility.  (Doc. 24, ¶ 2.)  This facility offered dry cleaning services from approximately 1967 until the late 1970s.  (Doc. 21, ¶ 3.)  One dry-cleaning solvent that RUS used was tetrachloroethylene ("PCE").  (*See* Doc. 24, ¶¶ 5–6.)  Both federal and Pennsylvania law define PCE as a "hazardous substance."  (*Id.* ¶ 6 (citing 40 CFR § 302.4).)[2]

Cintas purchased Defendants' Property in 2002.  (Doc. 24, ¶ 3.)  Thereafter, Cintas discovered that PCE and two degradation by-products—trichloroethylene ("TCE") and 1,2-dichloroethylene ("1,2-DCE")—had been released into the ground during RUS's ownership.  (Doc. 21, ¶¶ 5–6.)  Several years later, in 2008, Cintas notified the Pennsylvania Department of Environmental Protection ("PADEP") of its intent to remediate the release of the dry-cleaning solvents pursuant to Pennsylvania's Act 2 Program.  (*Id.* ¶ 7.)  An assessment of the groundwater and soil led Cintas to install and operate a "multi-phase extraction" system ("MPE")—which facilitated the removal of 5,000 pounds of source mass

---

[2] HSCA defines "hazardous substance" in part by reference to what is deemed a "hazardous substance" under CERCLA.  35 Pa. Stat. § 6020.103.

from Defendants' Property— as well as an on-site sub-slab depressurization system.  (*Id.* ¶ 9.)

Cintas's remedial efforts also led it to execute an access agreement with Blettner's predecessor in interest so that they could perform remedial work on Plaintiff's Property.  (*Id.* ¶ 12.)  Cintas's groundwater samples from Plaintiff's Property detected PCE, TCE, and 1,2-DCE.  (*Id.* ¶ 13.)  To allow for ongoing assessment, Cintas's environmental consultant installed permanent groundwater monitoring wells on Plaintiff's Property.  (*Id.* ¶ 14.)

### B.    Blettner's Attempt to Develop Plaintiff's Property

Blettner purchased Plaintiff's Property in 2022 for the purpose of constructing an on-site commercial warehouse and manufacturing facility that would be leased by Ring Container.  (*Id.* ¶ 18.)  Blettner hired the civil-engineering firm Site Design to prepare a site plan, among other tasks.  (*Id.* ¶ 20.)  Two aspects of Site Design's work are relevant here.

First, Site Design was tasked with obtaining the necessary National Pollutant Discharge Elimination System ("NPDES") permits.  (Doc. 28, ¶ 20.)  Due to the pollutants on Plaintiff's Property, PADEP required Blettner to obtain an individual NPDES permit, rather than let it operate under a general permit.  (Doc. 24, ¶ 12.)  Blettner's individual NPDES permit required it to develop and maintain a Post-Construction Stormwater Management plan consisting of Best Management

Practice ("BMPs").  (Doc. 24-6, p. 20.)[3]  The permit defined BMPs as "activities, facilities, measures, planning or procedures used to minimize accelerated erosion and sedimentation and manage stormwater to protect, maintain, reclaim, and restore the quality of waters and the existing and designated uses of waters within this Commonwealth before, during, and after earth disturbance activities."  (*Id.* at 3.)

Second, Site Design created the stormwater management plan required under the individual NPDES permit.  (Doc. 24-5, p. 7.)  As initially developed, Site Design's storm water management plan utilized infiltration practices.  (*Id.*)  Yet, PADEP prohibited infiltration into groundwater on Plaintiff's Property due to the on-site contamination.  (*Id.*; Doc 21-25, p. 2.)  Accordingly, Site Design had to redesign its initial stormwater management plan in order to comply with PADEP's directive.  (Doc. 24-5, p. 7.)

Ultimately, however, the warehouse facility was never completed.  Ring Container decided not to pursue the planned warehouse, because one of its customers decided not to pursue a project that would have utilized the warehouse. (Doc. 21, ¶¶ 22, 23.)  No development has occurred on Plaintiff's Property to date. (*Id.* ¶ 27.)

---

[3] For ease of reference, the court uses the page numbers from the CM/ECF header.

## C. Procedural Posture

On June 23, 2023, Blettner sued Defendants in the York County Court of Common Pleas.  (Doc. 1-1.)  Defendants subsequently removed the matter to this court on August 9, 2024.  (Doc. 1.)  Blettner shortly thereafter filed an amended complaint, which levels five causes of action against Defendants: (1) negligence; (2) continuing trespass; (3) public nuisance; (4) HSCA claims; and (5) a CERCLA claim to recover response costs.  (Doc. 2, pp. 4–11.)

Following discovery, Blettner and Defendants each moved for summary judgment.  (Docs. 19 & 22.)  Blettner seeks partial summary judgment on its statutory claims.  (Doc. 22, p. 3.)  Defendants seeks summary judgment on all of Blettner's claims.  (Doc. 19, pp. 1–2.) Both motions are fully briefed and ripe for adjudication.  (*See* Docs. 20, 21, 23, 24, 25, 26, 27, 28, 30, 31.)[4]

### JURISDICTION

The court has subject matter jurisdiction over Blettner's CERCLA claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 9613(b).  The court has supplemental jurisdiction over the rest of Blettner's claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this court pursuant to 28 U.S.C. § 1441(a) and 42 U.S.C. § 9613(b).

---

[4] In addition to these documents, the court also considered the parties' supplemental briefs, which the court ordered for the reasons explained below.  (Docs. 33, 34, and 35.)

**STANDARD OF REVIEW**

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**DISCUSSION**

## A. Negligence, Continuing Trespass, and Public Nuisance

Defendants seek summary judgment on Blettner's common law claims for negligence, continuing trespass, and public nuisance. Blettner concurs that Defendants are entitled to judgment on these claims. (Doc. 27, p. 1 n.1.) Accordingly, the court will grant Defendants' motion with respect to Blettner's common law claims.

Blettner, however, does not concur that Defendants are entitled to summary judgment on its purported HSCA public-nuisance claim. In Blettner's view, the HSCA creates a cause of action for public nuisance that is distinct from the common law action. (*See* Doc. 23, pp. 13–14.) Blettner relies on § 1101 of the HSCA, which states in relevant part: "A release of a hazardous substance or a violation of any provision, regulation, order or response approved by the department under this act shall constitute a public nuisance." 35 Pa. Stat § 6020.1101. On this supposedly distinct claim, Blettner argues that it is entitled to partial summary judgment on the ground that Defendants' release of hazardous substances constitutes a public nuisance *per se*. (Doc. 23, pp. 13–14.)

Blettner misunderstands § 1101's significance. For the tort of public nuisance, Pennsylvania has adopted the approach of the Restatement (Second) of Torts. *See City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 907

(E.D. Pa. 2000); *Atl. Richfield Co. v. County of Montgomery*, 294 A.3d 1274, 1283 (Pa. Commw. Ct. 2023).  Two sections of the Restatement are relevant to analyzing a public-nuisance claim.  First, § 821B defines a public nuisance as "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B(1) (Am. Law Inst. 1979).  Second, § 821C defines who has standing to bring a public-nuisance claim.  *Id.* § 821C.  The HSCA's public-nuisance provision concerns § 821B and represents a "legislative determination" that a violation of the HSCA or the regulations promulgated thereunder satisfies § 821B.  *Keystone Chem. Co. v. Mayer Pollock Steel Corp.*, No. 92-cv-6000, 1993 WL 101291, at *3 (E.D. Pa. Apr. 7, 1993); *accord* Restatement (Second) of Torts § 821B cmt. c ("[A]ll of the states have numerous special statutes declaring certain conduct or conditions to be public nuisances because they interfere with the rights of the general public. . . . These statutes amount to a legislative declaration that the conduct proscribed is an unreasonable interference with a public right.").

Section 1101 does not create a distinct cause of action for public nuisance. Nor does Section 1101 define "who may bring suit or who may recover" for public nuisance.  *Keystone Chem.*, 1993 WL 101291, at *3.  A plaintiff must still satisfy § 821C's standing requirement in order to bring a public-nuisance claim, whether

they rely on the HSCA or not.[5]  *Id.*; *Pottstown Indus. Complex v. P.T.I. Servs., Inc.*, No. 91-cv-5660, 1992 WL 50084, at *9 (E.D. Pa. Mar. 10, 1992).  Nowhere in its briefing does Blettner attempt to establish it has standing to bring a public-nuisance claim.  To the contrary, Bletter conceded the issued.  In opposing Defendants' motion for summary judgment, Blettner offered no rejoinder to Defendants' argument that Blettner does not have standing to bring a claim for public nuisance.[6]  Blettner instead conceded that Defendants were entitled to summary judgment.  (Doc. 27, p. 1 n.1.)  Thus, Blettner either concurred with Defendants standing argument or, at the very least, waived any counterarguments.  Either way, Blettner's public-nuisance claim fails.

## B. HSCA

Under the HSCA, parties who are responsible for the release of hazardous substances from a site are held strictly liable for the "reasonable and necessary or appropriate" costs of response incurred by another person.  35 Pa. Stat. § 6020.702.  To establish an HSCA claim to recover response costs, a plaintiff must prove: "(1) defendants are responsible parties; (2) there has been an actual or threatened 'release' of a hazardous substance from a site; (3) 'response costs' were or will be

---

[5] Blettner seemingly recognized as much when it clarified that its partial motion for summary judgment "does not seek a determination as to whether [Blettner] satisfies any additional requirements for it to recover damages resulting from public nuisance."  (Doc. 23, p. 14 n.2.)

[6] Blettner also chose not to reply to Defendants' argument that their public-nuisance claim is time barred.

incurred; and (4) the response costs were 'reasonable and necessary or appropriate.'"  *In re Joshua Hill, Inc.*, 294 F.3d 482, 485 (3d Cir. 2002); *accord Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476, 484 (M.D. Pa. 2013).

### 1.  Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on Blettner's HSCA count for two reasons.  Neither is persuasive.

### a.  Statute of Limitations

Defendant's first argument is that Blettner's HSCA claim is time-barred. The HSCA's limitations provision states:

> Notwithstanding the provisions of any other statute to the contrary, actions for civil or criminal penalties under this act or civil actions for releases of hazardous substances may be commenced at any time within a period of 20 years from the date the unlawful conduct or release is discovered.  Actions to recover response costs may be commenced within six years of the date those costs are incurred.  The initial action to recover response costs shall be controlling as to liability in all subsequent actions.

35 Pa. Stat. § 6020.1114.

In their initial briefing, the parties assumed that the first sentence of § 1114 applies to Blettner's HSCA claim.  (*See* Doc. 20, pp. 22–24; Doc. 27, pp. 6–10; Doc. 31, pp. 2–6.)  Defendants argued that the first sentence's 20-year period had expired because they discovered the release in 2002.  (Doc. 20, pp. 22–24.) Blettner argued that its HSCA claim was timely even if the 20-year period applied. (Doc. 27, pp. 6–10.)  Neither party considered the second sentence of the statute,

despite its apparent applicability to "[a]ctions to recover response costs."  35 Pa. Stat. § 6020.1114.  This is a curious omission, given that there is no dispute that Blettner must have incurred the alleged response costs after it purchased Plaintiff's Property in 2022, well within 6 years of this lawsuit.  Admittedly, it is not immediately obvious which provision of § 1114 governs since this case seems to be both a "civil action[] for releases of hazardous substances" and an "[a]ction[] to recover response costs."  35 Pa. Stat. § 6020.1114.  Caselaw offers no guidance. As far as the court can tell, it is a matter of first impression whether an HSCA claim is timely if brought within 6 years of the plaintiff incurring response costs, but later than 20 years after a release is discovered.[7]

Due to the novelty of this issue, the court ordered supplemental briefing on two questions.  (Doc. 32.)  The first was whether the 6-year limitations period in § 1114 governs Blettner's HSCA claim.  (*Id.* at 2.)  The second was whether Blettner's HSCA claim was timely assuming the 6-year period did in fact govern. (*Id.*)  In their supplemental briefing, Defendants argue that § 1114's first sentence constitutes a statue of repose and that its second sentence constitutes a statute of limitations that operates within the statute of repose.  (Doc. 33, p. 3.)  Once the 20-year repose period expires, Defendants' argument goes, a plaintiff is precluded

---

[7] The court makes no determination as to whether the 20-year period, if applicable, has expired in this case.  The court simply assumes that it has, *arguendo*, for purposes of resolving this motion.

from bringing a claim for response costs—even if the six-year limitations period has not expired—because expiration of the repose period abolishes the claim.[8] (*Id.* at 5–6.) Plaintiff concurs that the first sentence constitutes a statute of repose, but argues that it does not apply to response-cost actions. (Doc. 34, p. 5.)

The court must first consider whether § 1114's first sentence sets forth a statute of repose. No other court appears to have had occasion to consider this question.[9] In the absence of a decision from the Pennsylvania Supreme Court, this court must predict how that court would resolve the issue. *Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45–46 (3d Cir. 2009). The court must consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand." *Id.* at 46 (quoting *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000)).

Both a statute of limitations and a statute of repose limit the time a plaintiff may bring a cause of action, but they are distinct in two ways. First, a statute of repose, unlike a statute of limitations, "completely abolishes and eliminates [a] cause of action." *Gidor v. Mangus*, 345 A.3d 629, 640–41 (Pa. 2025) (quoting

---

[8] Defendants acknowledge that the six-year limitations period would ordinarily apply to Blettner's attempt to recover response costs under the HSCA. (Doc. 33, pp. 5–6.)

[9] The parties cite no case in which a court has considered the question, and this court's independent research has found none.

*Vargo v. Koppers Co., Eng'r & Constr. Div.*, 715 A.2d 423, 425 (Pa. 1998)).

Second, each begins running upon different occurrences. A limitations period

begins running when a claim accrues. *Gilbert v. Synagro Cent., LLC*, 131 A.3d 1,

15 (Pa. 2015). Conversely, a repose period begins running upon an occurrence that

is independent of when the claim accrues. *CTS Corp. v. Waldburger*, 573 U.S. 1, 8

(2014); *Abrams v. Pneumo Abex Corp.*, 981 A.2d 198, 211 (Pa. 2009); *City of

Warren v. Workers' Comp. Appeal Bd. (Haines)*, 156 A.3d 371, 377 (Pa. Commw.

Ct. 2017). Indeed, the Pennsylvania General Assembly "does not tie [a] repose

period to 'whether a cause of action has accrued or whether any injury has

resulted.'" *Gidor*, 345 A.3d at 641 (quoting *Abrams*, 981 A.2d at 211).[10]

Therefore, § 1114's 20-year period can be a statute of repose only if it

"begins with a definitely established event that is independent of an injurious

occurrence or discovery thereof." *Gidor*, 345 A.3d at 641 (quoting *City of

Philadelphia v. Phila. Tax Rev. Bd. ex rel. Keystone Health Plan E., Inc.*, 132 A.3d

946, 952 (Pa. 2015)). It plainly does not. The 20-year limitations period is defined

by reference to when "the unlawful conduct or release is *discovered*.'" 35 Pa. Stat.

§ 6020.1114 (emphasis added). This period is unmistakably dependent on when a

---

[10] Under Pennsylvania law, a cause of action generally accrues "when an injury is inflicted."
*Rice v. Diocese of Altoona-Johnstown*, 255 A.3d 237, 246 (Pa. 2021) (quoting *Wilson v. El-Daief*, 964 A.2d 354, 361 (Pa. 2009)). When the discovery rule applies, however, "a cause of action does not accrue until the plaintiff discovers, or should have discovered, the injury." *Dubose v. Quinlan*, 173 A.3d 634, 638 n.4 (Pa. 2017).

14

plaintiff discovers that he or she has an HSCA claim to bring—*i.e.*, when that claim accrues.  In this way, § 1114's 20-year limitation operates in a wholly distinct manner from actual statutes of response.  *Compare id.*, *with* 42 Pa. Con. Stat. § 5536 ("[A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement . . . ."), *and* 68 Pa. Con. Stat. § 7512 ("An action to recover damages arising from a home inspection report must be commenced within one year after the date the report is delivered.").[11]

Ultimately, § 1114's 20-year period cannot begin running until a claim accrues.  That is the antithesis of "the accepted principle of all statutes of repose" that they begin running independently of when a claim accrues.  *Gidor*, 345 A.3d at 642.  For this reason, the court predicts the Pennsylvania Supreme Court would find that § 1114's first sentence constitutes a statute of limitations, not a statute of repose that extinguishes all HSCA claims after its expiration.

---

[11] For discussions on why § 5536 and § 7512 are statutes of repose, reference *Altoona Area School District v. Campbell*, 618 A.2d 1129, 1134 (Pa. Commw. Ct. 1992), and *Gidor*, 345 A.3d at 639–46, respectively.

Still remaining is the question of which limitations period governs.  Upon consideration, the court predicts that the Pennsylvania Supreme Court would find Blettner's claims timely under § 1114's second sentence.

First, the court begins with the text of the statute.  *See Klar v. Dairy Farmers of Am., Inc.*, 300 A.3d 361, 372 (Pa. 2023) ("[A]s always when we interpret a statute, we begin with the text itself.").  Two well-established interpretive cannons suggest that § 1114's second sentence provides the governing limitations period.

The first cannon is that "when faced with a conflict in statutory provisions[,] . . . the specific controls the general." *Commonwealth v. Hardy*, 337 A.3d 385, 413 (Pa. 2025).  The 20-year limitations period applies to "civil actions for releases of hazardous substances," whereas the 6-year limitations period specifically applies to "[a]ctions to recover response costs."  35 Pa. Stat. § 6020.1114.  The former is more general than the latter and encompasses civil actions that do not involve recovery of response costs.  For instance, § 1115 creates a right of action for persons "who ha[ve] experienced or [are] threatened with personal injury or property damage as a result of a release of a hazardous substance . . . to prevent or abate a violation of th[e] HSCA."[12]  35 Pa. Stat. § 6020.1115.  The 6-year

---

[12] It is ambiguous whether Blettner is pursuing damages under § 1115.  Blettner's amended complaint cites § 1115 in its HSCA count and makes a conclusory reference to property damage. (Doc. 2, ¶ 67.)  But, Blettner makes no mention of a § 1115 claim in its motion for partial summary judgment and only references its claim to recover response costs.  (*See* Doc. 22, ¶¶ 5–9, Doc. 23, pp. 9–13.)  Accordingly, the court decides now only whether Blettner's claim for

limitations period, on the other hand, is more specific and applies to a singular type of action under the HSCA. This specificity compared to the generality of the 20-year limitations period suggests that the 6-year limitations period should apply in actions to recovery response costs, like this one.

The second cannon is that a court's "interpretation must not render any provision extraneous." *Gavin v. Loeffelbein*, 205 A.3d 1209, 1221 (Pa. 2019); *accord Commonwealth v. Ostrosky*, 909 A.2d 1224, 1232 (Pa. 2006) (explaining that legislatures are "presumed not to intend any statutory language to exist as mere surplusage and, accordingly, courts must construe a statute so as to give effect to every word."); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (1st ed. 2012) ("If possible, every word and every provision is to be given effect . . . . None should be ignored. None should needlessly be given an interpretation that causes it . . . to have no consequence."). If § 1114 was interpreted to bar response-cost actions 20 years after discovery of a release regardless of when response costs were incurred, the statute's second sentence would be rendered superfluous. Such an outcome could, perhaps, be avoided if the second sentence were read to operate within the first—*i.e.*, the six-year period only applies to the extent the 20-year period has not expired. Yet,

---

response costs is time barred, since it is unclear precisely whether Blettner is pursuing any other type of HSCA claim.

17

nothing in § 1114's text suggests that the two sentences are meant to work together in such a manner. The statute's plain text instead suggests that the first and second sentences set forth independent limitations periods and that the latter exclusively applies in actions to recover response costs.

Two further considerations suggest that this interpretation of § 1114 is correct. The first is CERCLA's statute-of-limitations provision. The HSCA "was modeled after CERCLA." *Pa. Mfrs.' Ass'n Ins. Co. v. Johnson Matthey, Inc.*, 243 A.3d 298, 309 (Pa. Commw. Ct. 2020). For this reason, courts generally construe provisions of the HSCA "to be coterminous with the parallel provisions of . . . CERCLA." *Trinity Indus., Inc. v. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 720 (W.D. Pa. 2014), *aff'd*, 903 F.3d 333 (3d Cir. 2018); *accord Joshua Hill*, 294 F.3d at 489 (relying on analogous provisions of CERCLA to interpret HSCA); *Gen. Elec. Envtl. Servs., Inc. v. Envirotech Corp.*, 763 F. Supp. 113, 115 n.1 (M.D. Pa. 1991) ("The court will . . . rely in some degree on interpretations of CERCLA as guidance for interpreting the HSCA."). Like the HSCA, CERCLA permits, *inter alia*, private actions to recovery necessary response costs. 42 U.S.C. § 9607(a)(4)(B). CERCLA contains a limitations provision that applies specifically to response-cost actions. *Id.* § 9613(g)(2). Those actions must be brought either within 3 years of completing a removal action or 6 years of completing a remedial action. *Id.* Clearly, CERCLA defines the limitations period

18

for response-cost actions by reference to when removal or remedial actions are conducted and, consequently, when response costs are incurred. Since HSCA is modeled after CERCLA, the Pennsylvania General Assembly presumably intended the HSCA's limitations period for response-costs actions to operate in the same way as CERCLA's. Interpreting § 1114 to bar an HSCA response-cost action based on when a release is discovered would undermine that intent and create an unnecessary distinction between HSCA and CERCLA.

The second consideration is HSCA's own stated goals. One of the HSCA's primary goals is "to provide for the cleanup of sites in this Commonwealth that are releasing or threatening the release of hazardous substances or contaminants into the environment." 35 Pa. Stat. § 6020.102(12)(ii). This goal would be undermined by limiting response-costs actions based on when a release is discovered rather than when the costs are actually incurred. Such a scheme would disincentivize anyone from undertaking necessary remedial action whenever the 20-year period expires. That outcome is unwarranted, especially given the HSCA's text.

For these reasons, the court predicts that the Pennsylvania Supreme Court would find that an action to recover responses costs is timely so long as it is brought within the 6-year limitations period in § 1114. Here, no party disputes that Blettner incurred its purported response costs within six years of this suit's initiation. Therefore, its HSCA claim is timely.

19

### b.  Response Costs

Defendants' second argument is that Blettner's HSCA claim must fail because it did not incur response costs.  (Doc. 20, pp. 24–27.)  Blettner retorts that it has incurred and will incur two such costs: (1) those incurred to obtain an individual NPDES permit; and (2) those incurred to implement and maintain the enhanced BMPs for stormwater discharge.  (Doc. 27, p. 11.)  Defendants retort that these costs are not "response costs" for two reasons.

Defendants first contend that the cost of maintaining enhanced stormwater-discharge BMPs is a speculative future cost that Blettner will incur only if it conducts construction activities on Plaintiff's Property.  (Doc. 31, p. 7.)  Defendants go on to aver that Bletter has no plans to develop its property and is actually intending to sell it.  (*Id.*)  Defendants' argument is unpersuasive.  As an initial matter, a party that has yet to incur responses costs may still seek a declaratory judgment under the HSCA for response costs that it will incur.  *See F.P. Woll & Co. v. Fifth & Mitchell St. Corp.*, 326 F. App'x 658, 661 (3d Cir. 2009) (affirming district court's entry of declaratory judgment for future response costs); *see also Joshua Hill*, 294 F.3d at 485 (listing as element of HSCA claim that "'response costs' were *or will be* incurred" (emphasis added).)  Moreover, Defendants have failed to show that no genuine dispute exists as to whether Blettner will incur future response costs.  It is true Joe Holland, the individual

20

overseeing development of Plaintiff's Property, testified that Blettner engaged a commercial real estate broker to list Plaintiff's Property.[13]  (Doc. 26-1, p. 2.)  But Holland also testified that Blettner is open to opportunities the broker can find other than a sale, including a "build to suit" arrangement.  (*Id.*)  Blettner's ultimate intention with Plaintiff's Property is a factual dispute that must be resolved by the factfinder.  On this record, the court cannot say that Blettner's incurring future response costs is speculative as a matter of law.

Defendants next argue that Blettner's costs were not spent on measures that were a "response" to the release of PCE and its by-products.  The HSCA defines "response" as "[a]ction taken in the event of a release or threatened release of a hazardous substance or a contaminant into the environment to study, assess, prevent, minimize or eliminate the release in order to protect the present or future public health, safety or welfare or the environment."  35 Pa. Stat. § 6020.103.

As Defendants see it, obtaining an individual NPDES permit and implementing stormwater-discharge BMPs are simply measures to prevent Blettner's own construction activities from spreading existing contamination. (Doc. 20, p. 27.)   This is a critical nuance according to Defendants.  In their own words, "[r]efraining from undertaking construction activities in a manner that

---

[13] Joe Holland's father, Roger Holland, is a trustee of the Holland Family Trust, which is the sole member of Blettner.  (Doc. 28, ¶ 16.)

could exacerbate or spread contamination is clearly distinguishable from 'minimizing or mitigating the spread of contamination.'" (Doc. 31, p. 10.) Defendants cite no authority to suggest that this is anything but a distinction without a difference. In fact, the Third Circuit has rejected this type of argument. *Joshua Hill*, 294 F.3d at 490 ("Nothing in the [HSCA] precludes recovery of otherwise 'reasonable and necessary or appropriate' response costs simply because they are incurred in connection with plans for property development.").

In any event, Defendants' apparent position relies on the faulty premise that Blettner has not borne heightened burdens or taken any affirmative action to minimize the spread of existing contamination. The parties agree that the contamination of groundwater on Plaintiff's Property caused by RUS's release is the reason Blettner needed to incur the extra costs of obtaining an individual NPDES permit; otherwise, Blettner could have operated under a general NPDES permit. (Doc. 24, ¶ 12; Doc. 26, ¶ 12.) The individual permit requires Blettner to implement heightened BMPs that would be unnecessary in the absence of Defendants' contamination. (Doc. 24, ¶ 14; Doc. 26, ¶ 14.) Defendants acknowledge that Blettner must comply with these heightened requirements in order to ensure it does not "exacerbate or spread contamination." (Doc. 31, p. 10.) .

22

Under these circumstances, the court cannot say that, as a matter of law, the costs Blettner has incurred and may incur to comply with these heightened requirements are not necessary response costs.[14] Accordingly, Defendants' motion for summary judgment on Blettner's HSCA claim will be denied.

### 2. Blettner's Motion for Summary Judgment

Blettner seeks partial summary judgment on its HSCA claim.  Specifically, Blettner seeks a determination that Defendants are "strictly liable for whatever costs are ultimately deemed to be reasonable and necessary or appropriate" response costs.  (Doc. 23, p. 13.)  The court interprets this as a request for judgment on the first two elements of its HSCA claim—*i.e.*, that defendants are responsible parties and there has been an actual release of a hazardous substance from a site.  *Joshua Hill*, 294 F.3d at 485.  Defendants offer no response addressing these two elements.  (*See* Doc. 25, pp. 4–5.)  Instead, they repeat their other arguments why Blettner's HSCA claim should fail.  (*Id.*)  Discerning no opposition from Defendant on these two elements, the court will grant Blettner's partial summary judgment on these elements of the HSCA claim.

### C. CERCLA Claims

Liability for response costs are imposed on a defendant under CERCLA when a plaintiff establishes: "(1) the defendant is a 'responsible party'; (2) the

---

[14] To be clear, the court is not holding that Blettner has incurred necessary response costs.  That is an issue for the factfinder to resolve.

hazardous substances were disposed of at a 'facility'; (3) there is a 'release' or threatened release of hazardous substances into the environment; and (4) the 'release' causes the incurrence of 'response costs.'" *Pennsylvania v. Lockheed Martin Corp.*, 684 F. Supp. 2d 564, 570–71 (M.D. Pa. 2010); *accord N.J. Tpk. Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 103–04 (3d Cir. 1999). Moreover, responses costs are recoverably only to the extent they are "necessary" and "consistent with the national contingency plan" ("NCP"). 42 U.S.C. § 9607(a)(4)(B).

### 1. Defendant's Motion for Summary Judgment

Defendants present two alternative arguments for why it is entitled to summary judgment on Blettner's CERCLA claim. Their frontline position is that Blettner has not incurred response costs. Their backup position is that Blettner did not incur response costs in a manner consistent with the NCP.

### i. Response Costs

Defendants argue that Blettner has not incurred response costs because the actions Blettner has taken have not had "the effect of cleaning up or preventing releases." (Doc. 20, p. 30.) Those actions, according to Defendants, have simply had the effect of "prevent[ing] [Blettner] from further spreading or exacerbating the environmental conditions in the groundwater." (*Id.* at 31.) This argument suggests that only costs associated with actions that have an immediate clean-up

effect are recoverable.  Yet, this definition of "response" is far narrower than what the statute provides.

CERCLA defines "response" as "remove, removal, remedy, and remedial action."  42 U.S.C. § 9601(25).  "Remove" and "removal" are defined in part as:

> [T]he cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release.

*Id.* § 9601(23).[15]  The definition of "response" plainly "encompass[es] a broad range of activities."  *Piccolini v. Simon's Wrecking*, 686 F. Supp. 1063, 1068 (M.D. Pa. 1988).  Indeed, many courts have recognized, for example, that "investigating and assessing the presence of hazardous substances"—actions that do not have an immediate clean-up effect—are recoverable under CERCLA. *Joshua Hill*, 294 F.3d at 490 (collecting cases).

Defendants seem to derive their narrower definition of "response" from isolated quotes in *Redland Soccer Club, Inc. v. Department of the Army of the United States*, 801 F. Supp. 1432 (M.D. Pa. 1992), and *Ambrogi v. Gould, Inc.*, 750

---

[15] The definition of "remedy" and "remedial action" encompasses a wide range of actions that are focused more on permanent remediation.  42 U.S.C. § 9601(24).

F. Supp. 1233 (M.D. Pa. 1990).  In *Ambrogi*, the court determined that response

costs were not recoverable under CERCLA for "medical surveillance, health effect

studies, and health assessments."  750 F. Supp. at 1246.  In doing so, the court

explained, "the definition of 'removal' should encompass 'such actions' which

'only contemplate the cleanup of toxic substances from the environment.'"  *Id.*

(quoting *Coburn v. Sun Chem. Corp.*, No. 88-cv-0120, 1988 WL 120739, at *5

(E.D. Pa. Nov. 9, 1988)).  *Redland Soccer Club* relied on *Ambrogi* in determining

that similar health-related costs were not response costs under CERCLA.  *Redland*

*Soccer Club*, 801 F. Supp. at 1435.  The *Redland Soccer Club* court emphasized

that private actions to recover response costs have "widely" been limited to the

"recover[y] [of] monies . . . expended to clean up sites or to prevent further

releases of hazardous chemicals."  *Id.*

Neither *Ambrogi* nor *Redland Soccer Club* suggest that the types of costs

Blettner has incurred are not response costs. The quotes from those cases upon

which Defendants rely were written in the context of evaluating costs that are

wholly distinct from the costs here, which were directly related to preventing the

spread of contamination that RUS caused.  Indeed, Defendants conceded as much

by acknowledging that Blettner took the actions it did "to prevent . . . further

spreading or exacerbating the environmental conditions in the groundwater."

(Doc. 20, p. 31.)  Defendants offer no authority that suggests Blettner's activities

26

were not, at a minimum, "necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from [Defendants'] release."  42 U.S.C. § 9601(23).  Accordingly, Defendants have failed to show that, as a matter of law, Blettner has not incurred necessary response costs under CERCLA.

### ii. Compliance with NCP

The NCP "is a national plan promulgated by the federal government to guide federal and state response actions." *AmeriPride Servs., Inc. v. Tex. E. Overseas, Inc.*, 782 F.3d 474, 480 (9th Cir. 2015).  Specifically, the NCP "sets forth . . . 'methods and criteria for determining the appropriate extent of removal, remedy, and other measures' and 'means of assuring that remedial action measures are cost-effective.'"  *United States v. E.I. Dupont De Nemours & Co.*, 432 F.3d 161, 168 (3d Cir. 2005) (citations omitted) (quoting 42 U.S.C. § 9605(a)(3), (7)).  The NCP details what is required for actions to be considered "consistent with the NCP":

> (3) For the purpose of cost recovery under section 107(a)(4)(B) of CERCLA:
>
> (i) A private party response action will be considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs (5) and (6) of this section, and results in a CERCLA-quality cleanup.

40 C.F.R. § 300.700(c)(3).  Paragraphs (5) and (6) of § 300.700(c) "include requirements about worker health and safety, documentation of costs, permits,

reports, removal site evaluation, remedial site evaluation, and opportunity for meaningful public comment." *Outlet City, Inc. v. W. Chem. Prods., Inc.*, 60 F. App'x 922, 927 (3d Cir. 2003).  For each requirement in those paragraphs, the NCP references another section of the NCP.

Defendants argue that Blettner has failed to adduce evidence that it complied with at least three requirements: those concerning (1) preparing and maintaining documentation, 40 C.F.R. § 300.700(c)(5)(ii) (referencing *id.* § 300.160);  (2) remedial investigations and feasibility studies, *id.* § 300.700(c)(5)(viii) (referencing *id.* § 300.430); and (3) opportunity for public comment, *id.* § 300.700(c)(6).  (Doc. 20, p. 32.)  The plain language of § 300.700(c)(3)(i) suggests that paragraphs (5) and (6) are applicable to Blettner.  In any event, Blettner makes no argument that the three cited requirements do *not* apply and, therefore, has waived any argument to the contrary.[16]

So, too, Blettner does not contest that it failed to comply with the NCP's requirements about preparing and maintaining documentation, and remedial investigations and feasibility studies.  Rather, Blettner argues only that it complied with the public-comment requirement, because its application for an individual

---

[16] Blettner argues that it "is not subject to the more exacting requirements of NCPs [sic] that apply to the large remedial action."  (Doc. 27, p. 14.)  This may well be true.  *See Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.*, No. 94-cv-0752, 1996 WL 557592, at *56 (E.D. Pa. Oct. 1, 1996) ("The requirements of the NCP vary depending on whether the response action is characterized as a removal or remedial action.").  Nevertheless, Blettner does not contest that the requirements Defendants identified are applicable in removal actions.

NPDES permit and approval thereof was published in the Pennsylvania Bulletin. (Doc. 27, pp. 14–15.)  This argument fails to two reasons.  First, Blettner does not provide a citation to the Pennsylvania Bulletin that provided public notice of Blettner's application for an individual NPDES permit.  Merely making factual assertions in a brief without "citation to substantiating evidence [is] insufficient to survive summary judgment."  *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, No. 11-cv-574, 2012 WL 2979038, at *15 (M.D. Pa. July 20, 2012).  Second, Blettner makes no attempt to argue why compliance with the public-comment requirement is sufficient to create a genuine issue as to whether Blettner's actions were consistent with the NCP.  Even if Blettner complied with the public-comment requirement, Blettner does not contest that (1) other requirements apply and (2) it did not comply with those applicable requirements.  On this record, there is no genuine dispute about whether Blettner complied with the NCP.  Accordingly, Defendants are entitled to summary judgment on Blettner's CERCLA claim.[17]

---

[17] Given this disposition, the court will deny Blettner's partial motion for summary judgment as it pertains this claim.

## CONCLUSION

For the reasons stated herein, the court will grant in part and deny in part both pending motions for summary judgment.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: March 6, 2026